AO 106 (Rev. 04 10)  Application for a Search Warrant

**FILED**

MAY 01 2018

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

SCG FOR
S. WONG
4/30/18

# UNITED STATES DISTRICT COURT

for the

Southern District of California

In the Matter of the Search of

*(Briefly describe the property to be searched
or identify the person by name and address)*

A Cellular Phone SIM Card Bearing Number
8501260713

)
)
)
)
)

Case No. **'18MJ8633**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachement A-2

located in the _____ **Southern** _____ District of _____ **California** _____, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B-2

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| | 21 United States Code Section 952, Unlawful Importation of Methamphetamine |

The application is based on these facts:
See attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

SA Jonathan Creiglow, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  5/1/18

*Judge's signature*

City and state:  El Centro, CA

Hon. ~~Peter C. Lewis,~~ United States Magistrate Judge
*Printed name and title*
William V. Gallo

1

## **ATTACHMENT A-2**

2

3

PROPERTY TO BE SEARCHED

4

The following property is to be searched:

5

6

SIM Card
Number: 8501260713

7

**(Subject SIM Card)**

8

The **Subject SIM Card** is currently stored at HSI evidence locker 2051 North

9

Waterman Avenue, Suite 100, El Centro, CA 92243.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

## **ATTACHMENT B-2**

ITEMS TO BE SEIZED

3

4

5

6

7

Authorization to search the cellular/mobile telephone described in Attachment A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

8

9

10

The evidence to be seized from the cellular telephone will be records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data for the period of February 17, 2018 to March 17, 2018:

11

12

     a.    tending to identify attempts to import methamphetamine or some other federally controlled substance from Mexico into the United States;

13

14

15

16

     b.    tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

17

18

     c.    tending to identify co-conspirators, criminal associates, or others involved in the importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

19

20

21

22

     d.    tending to identify travel to or presence at locations involved in the importation of methamphetamine or some other federally controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

23

24

     e.    tending to identify the user of, or persons with control over or access to, the cellular/mobile telephone; and/or

25

26

     f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

27

28

which are evidence of violations of Title 21, United States Code, §§ 952 and 960.

14

SCG FOR
S. WONG
4/30/18

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Jonathan Creiglow, being duly sworn, declare and state as follows:

### INTRODUCTION

1.      This affidavit supports an application for a warrant to search:

      a.      The **Subject Telephone:**
                  Phone type: Motorola
                  Model: XT1767
                  IMEI: 353308082265240

      b.      The **Subject SIM Card**:
                  SIM Card
                  Number: 8501260713

(collectively the **Subject Devices**).

2.      The evidence to be searched for and seized is described in Attachments B-1 and B-2, incorporated herein.

3.      The **Subject Devices** were seized on March 17, 2018, at the Calexico, California West Port of Entry (POE) in Calexico, California, from Maria HERNANDEZ pursuant to her arrest for importation of federally controlled substances. The **Subject Devices** are currently stored as evidence at the Homeland Security Investigations (HSI) evidence locker at 2051 North Waterman Avenue, Suite 100, El Centro, CA 92243.

4.      Based on the information below, there is probable cause to believe that the **Subject Devices** contain evidence of a crime, specifically, violations of Title 21, United States Code, Section 952, Unlawful Importation of Methamphetamine.

//

//

## EXPERIENCE AND TRAINING

5.     I am a Special Agent with Homeland Security Investigations (HSI) and have been employed since February 2017.  I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.  I was previously employed for nine (9) years by the United States Border Patrol.  My title was Supervisory Border Patrol Agent-Intelligence and I managed a plainclothes team charged with collecting intelligence and performing anti-smuggling operations along U.S. Southwest Border.  I have been the affiant of search warrants and I have received training in the analysis and preservation of cellphone related evidence.  I have a Bachelor of Science Degree in Psychology, a Bachelor of Arts Degree in Sociology, and a Masters of Arts Degree in Criminal Intelligence Studies.

6.     I am presently assigned to a Contraband Smuggling Group in El Centro, California, and my duties include investigating the illicit trafficking of controlled substances into the United States of America.  I am cross-designated by the United States Drug Enforcement Administration to conduct narcotics investigations and enforce the provisions of the Federal Controlled Substance Act, pursuant to Title 21, United States Code.

7.     Through training and experience, I have become familiar with narcotics trafficking techniques and the means used by narcotics traffickers to store and retrieve information pertinent to their criminal activities.  Based on my training and experience, as well as my consultations with other law enforcement personnel, I have learned that drug traffickers commonly use electronic devices such as cellular telephones and computers to

2

store names, telephone numbers, records, drug ledgers, and other information pertaining to drug trafficking activity.

8.     In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of narcotics investigations, and they share the opinions stated below.  Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

9.     Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators in order to further their criminal activities. This is particularly true in cases involving distributable quantities of hard narcotics, such as cocaine, heroin, and methamphetamine. Typically, load drivers smuggling narcotics across the border from Mexico into the United States are in telephonic contact with co-conspirators immediately prior to and following the crossing of the load vehicle, at which time they receive instructions on how to cross and where and when to deliver the controlled substances.

10.     Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

a.     Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

3

b.    Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

c.    Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

d.    Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

e.    Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of Border Patrol checkpoints.

f.    Drug smugglers and their co-conspirators often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

g.    Drug smugglers therefore generate many types of evidence that is stored on the cellular telephones, including, but not limited to, emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

11.    Based on my training and experience investigating narcotics offenses I know that Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for cellular telephone subscribers.  Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been used in connection with that telephone.

12.    Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I have learned that cellular/mobile

4

telephones often contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data.    This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I have learned that searches of cellular/mobile telephones, and SIM cards, associated with narcotics trafficking yields evidence:

a. tending to indicate efforts to import methamphetamine, or some other federally controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers– used to facilitate the importation of methamphetamine, or some other federally controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substances from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substances from Mexico into the United States;

e. tending to identify the user of, or persons with control over or access to, the cellular/mobile telephone; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## PROBABLE CAUSE

13.    On March 17, 2018, at approximately 1:55 a.m., HERNANDEZ attempted entry into the United States from Mexico at the POE while driving a white Nissan Versa

5

(Versa) bearing California license plate 8BEF478. Documents found inside the car indicate HERNANDEZ owned the Versa and she was the only person in the car. Customs and Border Protection, Canine Enforcement Officer (CEO) A. Magallanes approached HERNANDEZ's vehicle while conducting pre-primary inspection. CEO Magallanes' Human Narcotics Detection Dog, "Sandy," alerted to HERNANDEZ's vehicle. CEO Magallanes inspected the car by pealing back the door panel. He saw several clear packages tapped inside the car's door panel. Officers took HERNANDEZ and her car to the secondary inspection area.

14.     During secondary inspection, CBP Officer (CBPO) J. Murillo used an X-ray machine to find anomalies in all four of the car's door panels. Further inspection by CBPO R. Lopez revealed that the Versa's door panels contained 50 packages containing a white crystal-like substance. The substance field-tested positive for the properties and characteristics of methamphetamine. The total combined weight for the methamphetamine was approximately 26.6 kilograms (54.64 pounds), including packaging.

15.     Agents arrested HERNANDEZ at approximately 3:12 a.m. Homeland Security Investigations Calexico, California (HSI Calexico) SAs Jonathan Creiglow and Laura Marroquin responded at approximately 3:45 a.m.

16.     Agent Marroquin and I interviewed HERNANDEZ at the Calexico West POE with the assistance of a Spanish Translator (CBPO G. Telles) at approximately 7:00 a.m.

17.     In a post-*Miranda* interview, HERNANDEZ claimed she did not know about the narcotics found in her vehicle. HERNANDEZ said that she has the only pair of keys

6

to the Versa and was in control of her vehicle at all times.   Later in the interview,

HERNANDEZ recanted those statements and said that the previous Friday, March 16,

2018, she had loaned her car to an unidentified male she knew only as "Polo."

HERNANDEZ said that she did not know "Polo's" real name or his address.

HERNANDEZ speculated that it was "Polo" who placed the narcotics in her door panels

without her knowledge.

18.   When HERNANDEZ drove into the POE that night, she had the **Subject Cell Phone** with her.[1]

19.   Also among the possessions found in HERNANDEZ's vehicle at the time of

her arrest was a small notebook.   The notebook contained several handwritten notations of

various names, addresses, and phone numbers.   The notebook also contained the words

"Targeto Banco," next to an 11-digit number.   Concealed within that notebook was the

**Subject SIM card**.

20.   On March 17, 2018, Peter C. Lewis, United States Magistrate Judge, signed a

criminal complaint charging HERNANDEZ with the importation of a controlled substance,

---

[1]   HERNANDEZ consented to a search of the **Subject Cell Phone**.   Agents inspected the **Subject Cell Phone** and found three (3) Mexican numbers that had been in contact with the phone within approximately 12 hours of her arrest.   Those were the only numbers on the phone.   HERNANDEZ told Special Agents and CBPOs that she had more than one cellphone.   However, at her arrest HERNANDEZ claimed she possessed only the **Subject Cell Phone**.   HERNANDEZ said that one of the numbers found in her phone belonged to her sister and the other belonged to "Polo."   She could not identify the third number.   This information is provided for purposes of full disclosure, but for the purpose of determining whether there is probable cause to authorize the requested search and seizure warrants I ask that the Court not consider this information.

7

in violation of Title 21, United States Code, Sections 952 and 960. HERNANDEZ made her initial appearance on March 20, 2018. The Grand Jury indicted HERNANDEZ on the same charge on April 11, 2018.

21. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to drug trafficking activities of HERNANDEZ, and co-conspirators, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures and other digital information are stored in the **Subject Devices** described herein.

22. Finally, I also know that narcotics trafficking activities entail intricate planning to successfully evade detection by law enforcement. In my professional training, education and experience, I have learned that this requires planning and coordination in the days, weeks, and often months prior to the event. Given this, I request permission to search the **Subject Devices** for items listed in Attachments B-1 and B-2 beginning on February 17, 2018, up to and including March 17, 2018.

## METHODOLOGY

23. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as

personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow their subscribers to access their device over the internet and remotely destroy all of the data contained on the device.  For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired.  For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography.  This process is time and labor intensive and may take weeks or longer.

24.    Following the issuance of this warrant, I will collect the **Subject Devices** and subject them to analysis. All forensic analysis of the data contained within the **Subject Devices** and memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

25. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

26. Based on all of the facts and circumstances described above, there is probable cause to conclude that HERNANDEZ used the **Subject Devices** to facilitate violations of Title 21, United States Code, Section(s) 952 and 960.

27. Because the **Subject Devices** were promptly seized during the investigation of HERNANDEZ's smuggling activities and have been securely stored, there is probable cause to believe that evidence of illegal activities committed by HERNANDEZ continues to exist on the **Subject Devices**. As stated above, I believe that the date range for this search is from February 17, 2018 through March 17, 2018.

28. WHEREFORE, I request that the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the items described in Attachment A-1 and A-2, and the seizure of items listed in Attachment B-1 and B-2, using the methodology described above.

///

///

///

10

I swear the foregoing is true and correct to the best of my knowledge and belief.

Jonathan Creiglow, ~~Special Agent~~
Homeland Security Investigations

Sworn to and subscribed before me this __l__ day of May, 2018

HONORABLE ~~PETER C. LEWIS~~
United States Magistrate Judge  *William V. Gallo*

11

## **ATTACHMENT A-1**

### PROPERTY TO BE SEARCHED

The following property is to be searched:

>   Phone type: Motorola
>   Model: XT1767
>   IMEI: 353308082265240
>   (**Subject Telephone**)

The **Subject Telephone** is currently stored at HSI evidence locker 2051 North Waterman Avenue, Suite 100, El Centro, CA 92243.

12

1

## ATTACHMENT B-1
ITEMS TO BE SEIZED

2

3      Authorization to search the cellular/mobile telephone described in Attachment A-1
includes the search of disks, memory cards, deleted data, remnant data, slack space, and
4  temporary or permanent files contained on or in the cellular/mobile telephone for evidence
5  described below.  The seizure and search of the cellular/mobile telephone shall follow the
search methodology described in the attached affidavit submitted in support of the
6  warrant.

7      The evidence to be seized from the cellular telephone will be records,
8  communications, and data such as emails, text messages, chats and chat logs from various
9  third-party applications, photographs, audio files, videos, and location data for the period
of February 17, 2018 to March 17, 2018:

10

11          a.    tending to identify attempts to import methamphetamine or some other
federally controlled substance from Mexico into the United States;

12

13          b.    tending to identify accounts, facilities, storage devices, and/or services–
such as email addresses, IP addresses, and phone numbers–used to
14                facilitate the importation of methamphetamine or some other federally
15                controlled substance from Mexico into the United States;

16          c.    tending to identify co-conspirators, criminal associates, or others involved
17                in the importation of methamphetamine or some other federally controlled
substance from Mexico into the United States;
18

19          d.    tending to identify travel to or presence at locations involved in the
importation of methamphetamine or some other federally controlled
20                substance from Mexico into the United States, such as stash houses, load
21                houses, or delivery points;

22          e.    tending to identify the user of, or persons with control over or access to,
23                the cellular/mobile telephone; and/or

24          f.    tending to place in context, identify the creator or recipient of, or
25                establish the time of creation or receipt of communications, records, or
data involved in the activities described above.
26

27  which are evidence of violations of Title 21, United States Code, §§ 952 and 960.

28

1

## **ATTACHMENT A-2**

2

3

PROPERTY TO BE SEARCHED

4

The following property is to be searched:

5

6      SIM Card
       Number: 8501260713
7      (**Subject SIM Card**)

8

The **Subject SIM Card** is currently stored at HSI evidence locker 2051 North
9     Waterman Avenue, Suite 100, El Centro, CA 92243.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTACHMENT B-2**

ITEMS TO BE SEIZED

Authorization to search the cellular/mobile telephone described in Attachment A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data for the period of February 17, 2018 to March 17, 2018:

a.    tending to identify attempts to import methamphetamine or some other federally controlled substance from Mexico into the United States;

b.    tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

c.    tending to identify co-conspirators, criminal associates, or others involved in the importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

d.    tending to identify travel to or presence at locations involved in the importation of methamphetamine or some other federally controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

e.    tending to identify the user of, or persons with control over or access to, the cellular/mobile telephone; and/or

f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

which are evidence of violations of Title 21, United States Code, §§ 952 and 960.

15